UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD JACKSON,

       Plaintiff,

v.                                     Case No. 3:13cv174/MCR/CJK

MICHAEL D. CREWS, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

      This case, filed under the Civil Rights Act, 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, is before the court upon defendants' motion to dismiss for plaintiff's failure to exhaust administrative remedies. (Doc. 115). Plaintiff responded in opposition to the motion, and defendants replied. (Docs. 120, 128, respectively). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon careful consideration of the record, the parties' submissions and the relevant law, the court concludes that defendants' motion to dismiss should be granted and this case dismissed.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Graceville Correctional Facility.  Plaintiff initiated this lawsuit, *pro se*, on April 16, 2013, while confined at Santa Rosa Correctional Institution ("Santa Rosa CI").  (Doc. 1, p. 20).  Counsel for plaintiff appeared on February 21, 2014, and paid plaintiff's filing fee.  (Docs. 93, 94, 96, 97).  Plaintiff filed a counseled second amended complaint on March 26, 2014.  (Doc. 105).  Plaintiff's second amended complaint names as defendants Michael Crews, Richard Comerford, James White, Dr. Rummel, Marsha Nichols, Officer Locklear and Does 1-8.  (Doc. 105, p. 1).  Defendant Crews is sued in his official capacity as Secretary of the Florida Department of Corrections ("FDOC"), and the remaining defendants are sued in their individual capacities.  (*Id.*, pp. 3-5).  Plaintiff, who suffers paraparesis (partial paralysis of the lower limbs) and hypertension, claims that from October 4, 2012, through December 9, 2013, defendants Comerford, White, Rummel and Nichols subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they prohibited him from having a wheelchair inside his close management cell, even after plaintiff complained that he was forced to drag himself along the cell floor which dislocated his shoulder, increased his blood pressure and caused open sores and abrasions on his feet and legs.[1]  (*Id.*, pp. 7-10, 15-17 (Count 1)).  Plaintiff claims FDOC policy, FLA. ADMIN. CODE rr. 33-601.800(10)(d) and 33-210.201(4), violates the ADA and the Rehabilitation Act, because it allows prison officials to refuse a disabled close management inmate access to a wheelchair inside his cell.  (*Id.*, pp. 11-12, 17-21 (Counts 2 and 3)).

---

[1]Plaintiff was allowed to use a wheelchair outside his cell.  (Doc. 105).

Plaintiff further claims that on December 9, 2013, approximately eight months after he initiated this lawsuit, he was transferred to Northwest Florida Reception Center ("NWFRC") where, within hours of his arrival, defendant Locklear retaliated against him (at the request of defendants Comerford and White) for filing grievances and initiating this lawsuit by physically assaulting plaintiff, in violation of the First and Eighth Amendments.  (*Id*., pp. 12-13, 15-17, 23-24 (Counts 1 and 5).  Plaintiff alleges that between December 10, 2013, and mid-January 2014, approximately eight unknown correctional officers at NWFRC (Does 1-8) retaliated against plaintiff for initiating this lawsuit by withholding meals from plaintiff, in violation of the First and Eighth Amendments.  (*Id*., pp. 13-14, 15-17, 23-24 (Counts 1 and 5)).  Plaintiff claims the foregoing retaliation also supports a claim against the FDOC under the retaliation provision of the ADA.  (*Id*., pp. 21-23 (Count 4)).

On April 15, 2014, defendants filed a motion to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that plaintiff failed to properly exhaust his administrative remedies before filing this lawsuit. (Doc. 115). Plaintiff opposes dismissal, arguing that he fully and properly exhausted his administrative remedies.  (Doc. 120).  Defendants were granted leave to reply (doc. 127), and submitted their reply on May 23, 2014.  (Doc. 128).

DISCUSSION

Procedure for Ruling on a Motion to Dismiss for Failure to Exhaust Administrative Remedies

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA").  The court held that the defense of failure to exhaust should

be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendants' motion, and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Exhaustion Requirement

Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.   *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*,  534 U.S. at 524, 122 S. Ct. 983.  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both.  *Booth*, 532 U.S. at 734, 121 S. Ct. at 1825.

"[T]he PLRA exhaustion requirement requires <u>proper</u> exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387, 165 L. Ed. 2d 368 (2006) (emphasis added).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . .  Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage."  548 U.S. at 90-91, 93, 126 S. Ct. at 2386-87.  The Court reasoned that because proper exhaustion of administrative remedies is necessary, an inmate cannot

"satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  548 U.S. at 83-84, 126 S. Ct. at 2382; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).

The exhaustion requirement is not subject to waiver by a court, or futility or inadequacy exceptions.  *Booth*, 532 U.S. at 741 n.6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998).  Nor is a court allowed to continue a case pending exhaustion.  *Alexander*, 159 F. 3d at 1324-26 (holding that there is no discretion to waive the exhaustion requirement or provide continuances in the event a claim was not exhausted prior to filing suit).

The grievance procedures promulgated by the FDOC require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary.   Fla. Admin. Code  rr. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010).  Inmates may bypass the informal grievance step and initiate the grievance process at the formal institutional level for specified types of grievances, including emergency grievances, grievances of reprisals, grievances alleging violations of the ADA, medical grievances, and other issues not relevant here.  *Id*. at r. 33-103.005(1) and r. 33-103.006(3).  Inmates may bypass the informal and formal grievance steps and file a

direct grievance to the Office of the Secretary for specified types of grievances, including emergency grievances, grievances of reprisals and other issues not relevant here.  *Id*. at r. 33-103.005(1) and r. 33-103.007(6).

If an inmate files a direct grievance with the Office of the Secretary, he must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and for bypassing the informal and formal grievance steps.  *Id.* at r. 33-103.007(6)(a)(3).   Upon receipt of the direct grievance by the Office of the Secretary and following review of the grievance, if it is determined that the grievance is not a grievance of reprisal, the grievance must be returned to the inmate with the reasons for return specified and an advisement that the inmate resubmit his grievance at the appropriate level.  *Id.* at r. 33-103.007(6)(d).  Reasons for returning a direct grievance include, but are not limited to:  (1) the grievance addresses more than one issue or complaint, and (2) the inmate did not provide a valid reason for bypassing the previous levels of review as required, or the reason the inmate provided is not acceptable.  *Id.* at r. 33-103.014(1)(a), (f).  An inmate who has a grievance returned to him for those (or other) enumerated reasons may refile utilizing the proper procedure, or may correct the stated deficiency and refile if, upon receipt of the notification, the filing is within the time frames allowable.  *Id.* at r. 33-103.014(2).

Plaintiff's Administrative Grievances

The following facts are undisputed.  Plaintiff was transferred to Santa Rosa CI on October 4, 2012.  (Doc. 15 p. 7 ¶ 22).  Plaintiff initiated this lawsuit on April 16, 2013.  (Doc. 1, p. 20).  As to any claim plaintiff wishes to bring in this action, he was required to properly exhaust his administrative remedies via submission of grievances between October 4, 2012, and April 16, 2013.  *See Goebert v. Lee Cnty*, 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether

exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied. . . . Otherwise, the exhaustion requirement would not serve its purposes of permitting corrections officials an opportunity to redress grievances before a lawsuit is initiated, thereby reducing the amount of inmate litigation that is filed."); *see also Smith v. Terry*, 491 F. App'x 81, 83-84 (11th Cir. 2012) (holding that exhaustion defects cannot be cured by filing an amended complaint).

    A.    Plaintiff's Grievances to the Office of the Secretary (also referred to as "Central Office")

Defendants have submitted the FDOC's grievance log indicating the dates and locations plaintiff's grievance appeals and direct grievances to the Office of the Secretary were received, and the dates the responses to those grievances were mailed. (Doc. 115, Ex. A, p. 1).  The Secretary's log, which plaintiff does not dispute, demonstrates that plaintiff submitted five grievance appeals or direct grievances to the Office of the Secretary between October 4, 2012, and April 16, 2013.  (*Id*.).

Plaintiff tendered to prison officials Grievance Appeal Log# 13-6-04263 on February 4, 2013.  (Doc. 115, Ex. A, p. 2).  This grievance appeal concerned plaintiff's allegation that Correctional Officer Butler permitted other inmates to destroy or steal plaintiff's personal property.  (*Id*., pp. 2-3).  The parties do not dispute that there are no allegations in Grievance Appeal Log # 13-6-04263 that are raised in this action.

Plaintiff tendered to prison officials Grievance Appeal Log# 13-6-04266 on February 4, 2013.  (Doc. 115, Ex. A, p. 4).  This grievance appeal concerned plaintiff's allegation that Correctional Officer Butler failed to follow FDOC rules when inventorying plaintiff's property.  (Ex. A, pp. 4-6).  The parties do not dispute

that there are no allegations in Grievance Appeal Log# 13-6-04266 that are raised in this action.

Plaintiff tendered to prison officials Grievance Log# 13-6-06008 on February 18, 2013.  (Doc. 115, Ex. A, p. 7).  Grievance Log# 13-6-06008 contains some allegations related to this action.  Plaintiff labeled Grievance Log# 13-6-06008 a direct grievance (one of a sensitive nature and of reprisal), stating:

> This grievance is being filed per F.A.C. chapter 33-103.007(6)(a) as a grievance of a sensitive nature and reprisals.  Per F.A.C. chapter 33-103.015(6) states that I cannot direct my grievance to the staff member who is the subject of the complaint.  In this case it would be Santa Rosa C.I. from the administration on down are well aware of the tortue [sic] I am going through and they have done nothing to correct it:  Warden Cromford [sic]; Asst Warden Haas; Asst. Warden Johnson; Col. White; Dr. Rummel; Nurse Nichols, ARNP.  I was not supposed to be sent back here because of threats on my life by staff.  Since being returned, just about every day I have been harassed such as playing with my food; playing with my wheelchair and then slamming it into the wall; however, the biggest harasment [sic] is denying me the use of my wheelchair in the cell.  Because of being denied the use of my wheelchair in the cell, I have to crawl on the floor, the concrete floor is abrasive to my skin thus the floor rubs sores in my feet and legs.  Plus I already have high blood pressure, crawling on the floor spikes the blood pressure higher which can give me a stroke; my shoulders have an inch seperation [sic] from being dislocated 4-5 times each, because of that while crawling on the floor my arms have given out causing me to hit my head about (5) times so far.  Crawling on the floor is a hazard to my health and well being.  The above staff are well aware of this and so are other staff in Central Office and no one is doing anything to correct this problem.  This is a violation of the U.S. Constitution 8th and 14th Amendments and a violation of chapter 33-208.002(8).  The administration and medical allow inmates who can walk to have their wheelchairs in the cells with them.  This retaliation stems from me winning a case against staff in outside court.

(Ex. A, p. 7).  The Office of the Secretary returned Grievance Log# 13-6-06008 without action on March 8, 2013, with the following explanation:

> Note:  This grievance is not accepted as a grievance of reprisal.
>
> Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your appeal at the appropriate level at the institution.  You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.
>
> The institution should be given the opportunity to respond to your issue.
>
> However, your medical issues are separate from reprisal.  You should file a formal regarding medical issues.
>
> Based on the foregoing information, your appeal is returned without action.

(Ex., A, p. 8).

Plaintiff tendered to prison officials Grievance Appeal Log# 13-6-09242 on or about March 17, 2013.  (Doc. 115, Ex. A, p. 9).  Grievance Appeal Log# 13-6-09242 concerned plaintiff's allegation that Officer Williams was placing plaintiff's mail out of reach because Warden Comerford "had instructed him to do reprisal acts against [plaintiff] for filing grievances against him and his staff."  (*Id*.).  There is no dispute that there are no allegations in Grievance Appeal Log# 13-6-09242 concerning plaintiff's in-cell wheelchair access.  Plaintiff's Grievance Appeal Log# 13-6-09242 was returned to plaintiff without action on April 3, 2013, with the following explanation:

Note:  This grievance is not accepted as a grievance of reprisal.

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your appeal at the appropriate level at the institution.  You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.

The institution should be given the opportunity to respond to your issue. If in fact you did submit a grievance at the appropriate local level, and this appeal to the Central Office was receipted within 15 days of the date of the response you received, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner), to submit a new appeal at the next appropriate level and attach a copy of the required grievance.  This office will not review an appeal that was not filed within the time frames established by rule.

Based on the foregoing information, your grievance is returned without action.

(Doc. 115, Ex. A, p. 10).

Plaintiff tendered to prison officials Grievance Appeal Log# 13-6-09317 on March 18, 2013.  (Doc. 115, Ex. A, p. 11).  Plaintiff's grievance appeal complained that correctional officers had used plaintiff's wheelchair to transport another inmate and the inmate had ripped the armrest.  (*Id*., pp. 11-12).  Plaintiff sought repair of the armrest.  The parties do not dispute that there are no allegations in Grievance Appeal Log # 13-6-09317 that are raised in this action.

B.      Plaintiff's Formal Grievances to Santa Rosa CI

It is undisputed that plaintiff submitted seven formal grievances at the institutional level, directed to the warden or assistant warden, between October 4, 2012, and April 16, 2013.  (*See* Santa Rosa CI Grievance Log at Doc. 115, pp. 1-4

and 6-19).  The record demonstrates, and the parties do not dispute, that plaintiff's formal grievances concerned various issues unrelated to his in-cell wheelchair access, including correctional officers' improper handling or destruction of plaintiff's legal and personal property, correctional officers' allowing other inmates to use plaintiff's wheelchair (resulting in damage to the armrest), a correctional officer's verbal harassment, and plaintiff's wanting tinted prescription eyeglasses.  (Doc. 115, Ex. B, pp. 6-19).  There is no dispute that there are no allegations in plaintiff's formal grievances that are raised in this action.

C.     Plaintiff's Informal Grievances (Inmate Requests) to Staff

It is undisputed that plaintiff submitted twelve informal grievances, directed to various staff members, between October 4, 2012, and April 16, 2013.  (*See* Santa Rosa CI Grievance Log at Doc. 115, pp. 4-5 and 20-31).  The record demonstrates, and the parties do not dispute (*see* doc. 115, pp. 10-14; doc. 120, pp. 2-4), that the only informal grievances that relate to the issues raised in this action are these:

- On January 20, 2013, plaintiff signed Informal Grievance Log# 13-0429.  Plaintiff addressed his grievance to "Security," specifically, Col. White.  The grievance was receipted January 22, 2013.  Colonel White denied the grievance on January 23, 2013, with the following explanation:  "Medical will determine if your wheelchair needs to be in your cell.  If they do not approve your wheelchair to be in your cell it will be placed outside your cell."  (Doc. 115, Ex. B, p. 24).

- On January 22, 2013, plaintiff signed Informal Grievance Log# 13-0472.  Plaintiff addressed his grievance to "Warden."   The grievance was receipted January 22, 2013.  The official who responded to the grievance was not Warden Comerford, but rather D. McGowan, an OMC II.[2]  Officer McGowan denied the grievance on January 25, 2013,

_____

[2]Operations and Management Consultant II.

with the following explanation: "You are provided special passes as your provider feels necessary. At this time your provider does not feel you should have the wheelchair pass in your cell." (Doc. 115, Ex. B, p. 27).

- On January 17, 2013, plaintiff signed Informal Grievance Log# 13-0473. Plaintiff addressed his grievance to "Medical," specifically, Dr. Rummel. The grievance was receipted January 22, 2013. D. McGowan, denied the grievance on January 26, 2013, with the following explanation: "See response to informal grievance number 13-0472." (Doc. 115, Ex. B, p. 28).

- On February 15, 2013, plaintiff signed Informal Grievance Log# 13-1037. Plaintiff addressed the grievance to "Medical," specifically, Nurse Nichols. The grievance was receipted February 18, 2013. D. McGowan denied the grievance on February 21, 2013, with the following explanation: "In discussing this issue with our providers and with security, it is a security issue that you have access to your wheelchair outside the cell in CM only. It is not a medical necessity to have the wheelchair inside your cell. Sick call is available to discuss this issue." (Doc. 115, Ex. B, p. 29).

- On February 17, 2013, the same day plaintiff signed his Direct Grievance to the Office of the Secretary, plaintiff signed Informal Grievance Log # 13-1050. Plaintiff addressed the informal grievance to "Asst. Warden," specifically "Mr. Johnson." The grievance was receipted February 18, 2013. The grievance was returned without further processing on **February 19, 2013** (the identity of the responding official is unclear from the signature), with the explanation: "According to Chapter 33-103.005 Informal Grievance (1) the inmate shall not file duplicate informal grievances with different staff members." (Doc. 115, Ex. B, p. 30).

<u>Application of the Law to the Facts</u>

     A.     Exhaustion of Plaintiff's Wheelchair Access Claims
               (Counts 1, 2 and 3)

This section addresses plaintiff's Eighth Amendment, ADA and Rehabilitation Act claims arising from the denial of in-cell wheelchair access at Santa Rosa CI. Defendants assert that plaintiff did not properly exhaust his administrative remedies, because the only grievance plaintiff filed with the Office of the Secretary concerning this issue was his Direct Grievance Log# 13-6-06008, which was rejected/returned without action on the procedural ground that plaintiff improperly bypassed the institutional level (the formal grievance step).  Defendants assert that plaintiff was given the opportunity to correct this deficiency and properly complete the exhaustion process by submitting a formal/medical grievance at the institutional level and appealing to the Office of the Secretary, but plaintiff chose not to do so.  Plaintiff's failure to properly exhaust his administrative remedies before filing this lawsuit requires dismissal of his claims.

Plaintiff does not dispute that he did not file a formal grievance at the institutional level concerning his denial of in-cell wheelchair access, nor does plaintiff dispute that the only grievance he submitted to the Office of the Secretary on that issue was Direct Grievance Log# 13-6-06008, which was returned without processing on procedural grounds.  (Doc. 120, pp. 2-4).  Plaintiff further does not dispute that after his Direct Grievance Log# 13-6-06008 was returned, he did not attempt to continue exhaustion by submitting a formal grievance to the institution and appeal to the Office of the Secretary.  (*Id*.).  Plaintiff's contends he did not file a formal grievance at the institutional level for the following reasons:  (1) he was prohibited by FDOC Rule 33-103.015(6) from filing a formal grievance at the

institutional level (thus, his direct grievance satisfied the exhaustion requirement, the Secretary's rejection of the direct grievance was improper, and he was not requried to take further action after the direct greivance was rejected); (2) he was afraid to complain to the warden; and (3) after his direct grievance was denied, he was frustrated at the FDOC's lack of response to his complaint.  (Doc. 120, pp. 1-4). Defendants dispute plaintiff's factual and legal contentions.  (Docs. 120, 128).

The FDOC's inmate grievance procedure requires that a formal grievance be directed to the warden or assistant warden.  *See* FLA. ADMIN. CODE r. 33-103.006(1)(a).  Plaintiff argues that he was prohibited by FDOC Rule 33-103.015(6) from filing a formal grievance at the institutional level, because administrators and other staff at Santa Rosa CI, including Warden Comerford, were physically abusing him by denying him in-cell wheelchair access.  (Doc. 120, pp. 5-8).

Rule 33-103.015(6) provides, in relevant part:

(6)  At no time will an inmate who is alleging that he was physically abused as described in Section 944.35(3), F.S., or alleging reprisal by staff, as defined in Rule 33-103.002, F.A.C., be directed to submit his or her grievance to the staff person who is the subject of the complaint, nor will the grievance be referred to a staff person who is the subject of the complaint.

*Id.* (effective 11/7/2012).  Florida Statute § 944.35(3) provides:

(3)(a) 1. Any employee of the department who, with malicious intent, commits a battery upon an inmate or an offender supervised by the department in the community, commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

2. Any employee of the department who, with malicious intent, commits a battery or inflicts cruel or inhuman treatment by neglect or otherwise, and in so doing causes great bodily harm, permanent disability, or

permanent disfigurement to an inmate or an offender supervised by the department in the community, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

*Id*.

Plaintiff asserts that the denial of in-cell wheelchair access "forc[ed] him to crawl on the dirty, abrasive cell floor that created sores on his legs and feet," which qualifies as "physical abuse" under § 944.35(3), because it "inflict[ed] cruel or inhuman treatment by neglect or otherwise." (Doc. 120, pp. 5-6). Plaintiff asserts that the staff members responsible for this "physical abuse" were administrators at Santa Rosa CI (including the Warden). (Doc. 120, pp. 5-8; *see also* Direct Grievance at Doc. 115, Ex. A, p. 7). Plaintiff argues that the Office of the Secretary "was clearly incorrect in rejecting his grievance as noncompliant." (Doc. 120, pp. 9-10).

Although the words plaintiff cites – "inflict[ing] cruel or inhuman treatment by neglect or otherwise" – are in fact contained in § 944.35(3), a reading of the statute in its entirety establishes that the conduct of which plaintiff complained did not arguably fall within Section 944.35(3)'s purview. Section 944.35 is a criminal statute. Section 944.35 is titled "Authorized use of force; malicious battery and sexual misconduct prohibited; reporting required; penalties." Subsection (3)(a)1. states that any department employee who with malicious intent commits a battery upon an inmate commits a first degree misdemeanor. Subsection (3)(a)2. provides that any department employee who with malicious intent "commits a battery or inflicts cruel or inhuman treatment by neglect or otherwise, and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to an inmate . . . commits a felony of the third degree." Subsection (3)(b) broadly makes it a crime for any employee to engage in sexual acts with inmates. Subsection (3)(c) indicates

that an employee's violation of § 944.35(3) is sufficient grounds for that employee's dismissal.  Subsection (3)(d) is a reporting statute that requires other employees that witness an employee's criminal acts to formally report such acts.  Accordingly, for an inmate to satisfy Rule 33-103.015(6), the employee's conduct under § 944.35(3) must be criminal in nature.  The lack of wheelchair access inside plaintiff's cell does not arguably rise to the level of criminal behavior invoked by the statutory phrases malicious battery, malicious cruel or inhuman treatment with great bodily harm, or sexual misconduct.  The determination to keep a heavy metal wheelchair out of a prisoner's cell does not even approach the type of culpable actions contemplated by the statute.  One does not struggle to contemplate numerous legitimate penological reasons for such a decision by prison officials.

Further, Rule 33-103.015(6) authorizes only bypass of the staff member(s) who committed the alleged physical abuse.  Rule 33-103.015(6) does not authorize an inmate to bypass a complete level of administrative review by making the blanket assertion, as plaintiff did in Direct Grievance Log# 13-6-06008, that "Santa Rosa C.I. from the administration on down are well aware of the tortue [sic] I am going through and they have done nothing to correct it."  (Doc. 115, Ex. A, p. 7).  Plaintiff's proposed interpretation of the Rule is inconsistent even with his own actions, as the record demonstrates he submitted his Direct Grievance Log# 13-6-06008 to the Central Office despite his contention, in that very grievance, that "staff in Central Office" were also aware of his complaints and "no one is doing anything to correct this problem . . . in violation of the U.S. Constitution 8th and 14th Amendments." (Doc. 115, Ex. A, p. 7).

Further, although plaintiff's Direct Grievance Log# 13-6-06008 identified Warden Comerford, Assistant Warden Haas and Assistant Warden Johnson as some

of the staff members responsible for denying him in-cell wheelchair access, the record demonstrates that plaintiff knew, when he submitted Direct Grievance Log# 13-6-06008 on February 18, 2013, that neither Warden Comerford nor the assistant wardens, personally, had denied him in-cell wheelchair access.  Plaintiff relies on the record of his informal grievances (Informal Grievance Log# 13-1037, 13-0429, 13-0472 and 13-0473) to support his argument that Warden Comerford was one of the "perpetrators" of his "physical abuse."  (Doc. 120, pp. 1-4, 5-6).  As of February 18, 2013, plaintiff had submitted five informal grievances relating to the denial of in-cell wheelchair access.  These informal grievances are described in detail above.  (*See supra* Plaintiff's Administrative Grievances, Part C).  These informal grievances demonstrate that at the time plaintiff submitted Direct Grievance Log# 13-6-06008 to the Office of the Secretary on February 18, 2013, neither Warden Comerford, Assistant Warden Haas, nor Assistant Warden Johnson had denied plaintiff in-cell wheelchair access.  Plaintiff's informal grievances had been addressed by other staff members (Colonel White and D. McGowan) after consultation with unidentified security and medical personnel.  Plaintiff therefore cannot genuinely argue that he was entitled to invoke the exception of Rule 33-103.015(6), or that he reasonably believed the formal grievance step was unavailable to him.

Plaintiff's feigned confusion over how to properly exhaust his administrative remedies (doc. 120, p.10) is belied by the fact that the Secretary's rejection of plaintiff's Direct Grievance Log# 13-6-06008 explicitly informed plaintiff of the correct procedure for exhausting his wheelchair access issue – submission of a formal grievance at the institutional level and, if not satisfied, an appeal to the Office of the Secretary.  (Doc. 115, Ex. A, p. 8; *see also* FLA. ADMIN. CODE r. 33-103.006(3)(e) (authorizing an inmate filing a medical grievance to by-pass the informal grievance

step and grieve directly to the institution)).   Similarly, plaintiff's feigned fear of complaining to Warden Comerford through a formal grievance (doc. 120, pp. 1, 3-4) is also belied by the record.  Plaintiff submitted numerous formal grievances between December 12, 2013, and March 9, 2013, complaining about other issues relating to the conditions of his confinement, including the improper handling or destruction of his personal property, correctional officers' allowing other inmates to use plaintiff's wheelchair (resulting in damage to the armrest), verbal harassment, and a desire for tinted prescription eyeglasses. (Doc. 115, Ex. B, pp. 6-19).  Plaintiff, a prolific author of prison grievances, was, beyond any reasonable question, not deterred by fear from submitting formal grievances to the Warden.

Plaintiff's response to defendants' motion to dismiss reveals that the only plausible reason plaintiff filed this lawsuit before properly exhausting his administrative remedies is, as he admits, because he was "[f]rustrated at the complete lack of response he had received" after Direct Grievance 13-6-06008 was returned to him without action.  (Doc. 120, pp. 3-4).  A prisoner's frustration, or belief that exhaustion is futile, does not excuse his failure to properly exhaust available administrative remedies.  *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative remedies would be futile.").  Such must be so. Assuming a hypothetical prisoner, wont to submit serial or unreasonable complaints, such prisoner's subjective disappointment would, under plaintiff's construction, always provide an argument to excuse exhaustion, and would, accordingly, frustrate the exhaustion requirement entirely.

For the reasons discussed above, and for the additional reasons provided in defendants' motion to dismiss and reply (docs. 120, 128, pp. 4-6), the court concludes

that defendants' evidence demonstrates that at the time plaintiff commenced this lawsuit on April 16, 2013, he had not given FDOC administrators a fair opportunity to address the problem of his lack of in-cell wheelchair access. Plaintiff's situation did not fall within Rule 33-103.015(6)'s exception. When plaintiff asked the Office of the Secretary to address his issue via a direct grievance (Direct Grievance Log# 13-6-06008), the Office of the Secretary properly declined, because the issue was a fact-based medical issue that, under the FDOC's procedure, required investigation and response at the institutional level (via a formal grievance) before invoking the Central Office's review. The Office of the Secretary's rejection of plaintiff's direct grievance as noncompliant was in accord with the inmate grievance procedure. The institutional-level grievance step was available to plaintiff both before and after his direct grievance was rejected, and plaintiff's failure to utilize that step even after being given the opportunity to do so constitutes a failure to properly exhaust available administrative remedies. Plaintiff's failure to exhaust precludes him from recovering on his wheelchair access claims asserted under the Eighth Amendment of the United States Constitution, the ADA and the Rehabilitation Act (Counts 1, 2 and 3).

      B.    Exhaustion of Plaintiff's Remaining Claims
            (Counts 1, 4 and 5)

     Plaintiff's remaining claims concern an alleged assault, withholding of food and retaliation after plaintiff arrived at NWFRC on December 9, 2013. Defendants assert that those incidents occurred after plaintiff initiated this lawsuit on April 16, 2013, and therefore could not have been properly exhausted as required by 42 U.S.C. § 1997e(a). (Doc. 115, p. 14 n.3). Plaintiff asserts that his NWFRC claims should be deemed exhausted because they grew out of plaintiff's wheelchair access claims (*i.e.*, the incidents at NWFRC were in retaliation for plaintiff's complaints at Santa

Rosa CI).  (Doc. 120, p. 10).  The court need not decide whether plaintiff's NWFRC claims arose from his wheelchair access claims, because even assuming they did, plaintiff's remaining claims would still be subject to dismissal due to plaintiff's having failed to properly exhaust his wheelchair access claims.  As the Eleventh Circuit explained in *Smith v. Terry*, 491 F. App'x 81 (11th Cir. Sept. 28, 2012):

> The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.  *See Harris*, 216 F.3d at 981.  Because Smith's attempt to amend or supplement his original complaint did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint.  Therefore, he cannot cure the exhaustion defect.  *See id.* (stating that an amended or supplemental complaint could not cure the original defective complaint because "[n]o amendment or supplement to a pleading can change a historical fact.").  And although Rule 15(d) permits parties to supplement a pleading even when the original pleading is defective, Rule 15 "does not and cannot override a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)."  *Id.* at 982-83.

*Id.* at 83 (*citing Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000)).

Accordingly, it is respectfully RECOMMENDED:

1.  That defendants' motion to dismiss (doc. 115) be GRANTED.

2.  That this case be DISMISSED under 28 U.S.C. § 1915A for plaintiff's failure to state a claim upon which relief may be granted (failure to properly exhaust available administrative remedies).

3.  That the clerk be directed to close the file.

4.  That plaintiff's request that he not be required to pay a second filing fee should he re-file this action (doc. 120, p. 10) be DENIED.

At Pensacola, Florida, this 3rd day of June, 2014.

*s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).